## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BENNY LEE HODGE, | ) ) ) | |
| **Plaintiff,** | ) ) ) | |
| v. | ) ) ) | **Civil Case No. 08-403 (RJL)** |
| FEDERAL BUREAU OF INVESTIGATION, *et al.*, | ) ) ) ) | |
| **Defendants.** | ) ) ) | |

## MEMORANDUM OPINION
(February 4, 2011) [#15 and #18]

Plaintiff Benny Lee Hodge ("plaintiff" or "Hodge") brings this action against the

Federal Bureau of Investigation ("FBI") and U.S. Department of Justice ("DOJ")

(collectively "defendants") for failure to disclose information pursuant to the Freedom of

Information Act ("FOIA"). Plaintiff seeks material in order to collaterally challenge two

convictions that have placed him on death row in Kentucky. Before this Court is

defendants' Motion for Summary Judgment and plaintiff's Cross-Motion for Partial

Summary Judgment. After due consideration of the parties' pleadings, the relevant law,

and the entire record herein, defendants' motion is GRANTED and plaintiff's motion is

DENIED.

## BACKGROUND

On October 10, 2002, plaintiff, through counsel, submitted a FOIA and Privacy

1

Act request to the FBI Louisville Field Office ("LSFO") seeking "all records maintained by [the] agency pertaining to Mr. Hodge . . ." First Hardy Decl. to Def.'s Mot. for Summ. J., Mar. 9, 2009, ("Hardy Decl.") ¶ 13; Hardy Decl., Ex. A. Having been sentenced to death in Kentucky, plaintiff sought the records in order to collaterally challenge his convictions. Pl.'s Opp'n and Cross-Mot. for Partial Summ. J. ("Pl.'s Opp'n") at 4, n.1. About one year later, the LSFO informed plaintiff that 569 pages had been reviewed in response to his request and that 361 pages would be released. Hardy Decl. ¶¶ 17-19. The LSFO also advised plaintiff that certain documents were either exempt from release or contained redactions pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a(j)(2), and FOIA, 5 U.S.C. § 552(b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(E). Hardy Decl. ¶ 19. On January 7, 2004, plaintiff appealed the LSFO's decision to withhold/redact documents to the DOJ Office of Information and Privacy ("OIP"). Hardy Decl. ¶ 20. On March 6, 2005, the DOJ OIP affirmed the FBI's decision. Hardy Decl. ¶ 22.

Three years later, plaintiff filed this complaint, asking the Court to order the release of all documents responsive to plaintiff's initial request. Koyama Decl. to Pl.'s Opp'n, May 15, 2009, ("Koyama Decl.") ¶ 5. The FBI subsequently conducted a second search for responsive documents. After a review of all potentially responsive documents, the FBI determined that a total of 1,670 documents were, in fact, responsive to plaintiff's request. Koyama Decl. ¶¶ 9-11. From June 30, 2008 to September 12, 2008, over the course of three productions, the FBI released these documents, again redacting and withholding certain information under the Privacy Act and various FOIA provisions.

Hardy Decl. 1 ¶¶ 24-26; Koyama Decl. ¶¶ 9-11.  Later, while preparing its motion to for summary judgment, the FBI conducted yet another review of potentially responsive documents and identified an additional 92 responsive pages, which were released to plaintiff.  Koyama Decl. ¶ 19; Hardy Decl. ¶ 40.  Ultimately, the FBI determined that a total of 1,762 pages were responsive to plaintiff's October 10, 2002 request.

On March 10, 2009, defendants filed a motion for summary judgment contending that "all reasonably segregable documents not subject to exemption" had been disclosed.  Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 1.  Along with the motion, defendants filed an affidavit by David M. Hardy ("Hardy Declaration"), Section Chief of the FBI's Records Management Division in charge of responding to FOIA requests.  Along with giving background on the FBI's Central Records System ("CRS") and Electronic Surveillance ("ELSUR") Indices, the Hardy Declaration explains the steps taken by the FBI in conducting its search and outlines its redaction and withholding decisions.  *See* Hardy Decl.

On May 15, 2009, plaintiff filed a cross-motion for summary judgment, asserting that the Hardy Declaration inadequately explains why the FBI withheld and redacted certain documents.  *See* Pl. Opp'n at 12-13.  Plaintiff argues that because he cannot address, in fairness, the merits of the FBI's reasons for exempting certain documents from disclosure, defendants must produce an adequate index pursuant to *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).  *See* Pl. Opp'n at 15.  Plaintiff further contends that defendants have not shown that the FBI conducted an adequate search for responsive documents, did not reasonably segregate non-exempt information from

3

statutorily exempt information and did not establish that any of the exemptions claimed were appropriate. For all the reasons set forth below, this Court disagrees and grants summary judgment in favor of defendants.

## ANALYSIS

### I.    Summary Judgment Standard

"When assessing a motion for summary judgment under FOIA, the Court shall determine the matter *de novo*." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 95 (D.D.C. 2009) (*citing* 5 U.S.C. § 552(a)(4)(B)). Summary judgment is appropriate when the record demonstrates that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden, and the court will draw "all justifiable inferences" in the favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotations omitted). Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits its own affidavits, declarations or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA action, an agency must "demonstrate beyond a material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). To meet its burden, the agency may submit

4

affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with FOIA. *Id.* at 127. However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542.

Further, with respect to an agency's non-disclosure decisions, the court may rely on affidavits or declarations if they describe "the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (*quoting Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (internal quotations omitted).

## II.    The Epperson Documents

As an initial matter, plaintiff bases much of his position on a FOIA production to Mr. Roger Dale Epperson ("Epperson"), plaintiff's co-defendant in his underlying criminal case. Plaintiff has, therefore, provided a July 12, 2005 FIOA cover letter along

5

with roughly 125 pages of investigative material.  Komp Decl. to Pl.'s Opp'n, Ex. R

("Komp Decl., Ex. R").  Plaintiff claims that the letter and investigative material were

produced together in response to a FOIA request made by Epperson's counsel.  Plaintiff

further claims that the 125 pages include material relevant to plaintiff's own FOIA

request, but that was not released pursuant to plaintiff's request or, if it was released, was

heavily redacted.  Defendants, in response, argue that the Epperson documents were not,

in fact, produced in conjunction with the July 12, 2005 FOIA cover letter, and, even if

they were produced in conjunction with the FOIA request, the production was clearly

inadvertent.  Defendants conclude, therefore, that the 125 pages have no bearing on

plaintiff's FOIA request.  I agree.

Defendants have submitted two additional Hardy Declarations addressing the July

12, 2005 FOIA release ("First Supplemental Hardy Declaration" and "Second

Supplemental Hardy Declaration").  *See* Hardy Decl., Jul. 9, 2009 ("Supp. Hardy Decl.

1"); Hardy Decl., Sept. 15, 2009 ("Supp. Hardy Decl. 2").  In light of plaintiff's proffer

of the Epperson documents, the FBI performed a page by page comparison of the FBI's

own electronic record of what was released to Epperson with the July 12, 2005 cover

letter and the 125 documents put forth by plaintiff.  The First Supplemental Hardy

Declaration states clearly that the two sets of documents do not match.  Supp. Hardy

Decl. 1 ¶ 7.  In other words, the FBI's own electronic records indicate that 125 pages

produced by plaintiff were not the same set of documents actually produced in

conjunction with the July 12, 2005 letter.  Supp. Hardy Decl. 1 ¶ 7.

This is clearly supported by the record.  Indeed, the July 12, 2005 cover letter

specifically states that 450 pages were released pursuant to Epperson's FOIA request.

Komp Decl., Ex. R. This is facially inconsistent with the plaintiff's proffered production,

which only amounts to approximately 125 pages. Further, the FOIA cover letter states

that certain information within the production was deleted or withheld under various

Privacy Act and FOIA exemptions. Komp Decl., Ex. R. The letter explains that the

applicable exemptions are noted next to each excision within the production set, and then

list the specific exemptions referenced. Komp Decl., Ex. R. Despite this explanation,

clearly exempted information within the proffered documents was not redacted. In fact,

the 125 pages submitted by plaintiff include *no* redactions or notations at all. Komp

Decl., Ex. R. In sum, this Court finds that a reasonable jury could not conclude that that

the 125 pages submitted by plaintiff were deliberately released as part of the July 12,

2005 FOIA production.[1] These documents, therefore, were not released into the public

---

[1] Plaintiff puts forth various other arguments in an attempt to show that the Epperson production was made in conjunction with the July 12, 2005 letter. In particular, plaintiff submits declarations by Epperson's former and present counsel stating that the 125 pages are the documents produced in response to their FOIA request. At best, for the reasons set forth above, these declarations support defendants' argument that the documents were produced by mistake. Irrespective, these declarations are to no avail as they are contradicted by the clear evidence on the record. In fact, plaintiff argues that a FOIA cover letter sent to plaintiff's own counsel proves that the FBI makes both interim and final productions of materials. Koyama Decl., Ex. E. Plaintiff, therefore, argues that this shows that it is possible that only 125 pages were produced in conjunction with the July 12 letter, regardless of the fact that the letter states that the FBI is releasing 450 pages. Pl. Reply at 5-6. The letter cited as an example by plaintiff to support this position, however, was sent to plaintiff in conjunction with a production that the FBI made to plaintiff on September 12, 2008. Koyama Decl., Ex. E. The September 12 letter states on its face that 481 pages were being released. Koyama Decl., Ex. E. This number is consistent with the number of pages actually released on September 12, 2008. *See* Koyama Decl. ¶ 26. For plaintiff's argument to succeed, the number of pages actually produced would have to be some number smaller than 481 pages. In addition, Hardy's

domain and do not affect any subsequent FOIA disclosures and related claims under the

FOIA exemptions. *See Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 742, n.20 (D.C.

Cir. 1983).

III.    *Adequacy of the Hardy Declaration*

FOIA's purpose is to "implement a general philosophy of full agency disclosure"

by making agency "opinions, statements of policy, interpretations, [] staff manuals, and

instructions that are not published in the Federal Register" available for public inspection.

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 754

(1989) (internal quotations omitted). When an individual seeks a FOIA disclosure from a

federal agency, and the agency, in turn, claims one of various statutory exemptions, an

"asymmetrical distribution of knowledge" develops. *King v. U.S. Dep't of Justice*, 830

F.2d 210, 218 (D.C. Cir. 1987). This renders the opposing party "helpless to controvert"

the validity of the agency's exemption. *Vaughn*, 484 F.2d at 826. To remedy this

asymmetry, the agency must prove an exemption's merits through use of a *Vaughn* index

or its functional equivalent. *See Judicial Watch Inc. v. FDA*, 449 F.3d 141, 146 (D.C.

Cir. 2006). The agency satisfies its burden so long as the index is specific, detailed, and

separable enough to "adequately describe each withheld document, state which

exemption the agency claims for each withheld document, and explain the exemption's

---

declarations makes clear that the FBI's use of the word "interim" does not mean that
some the processed documents were not released. As used in the FOIA cover letter,
"interim" means that not all potentially responsive documents have been processed.
Supp. Hardy Decl. 2 ¶ 6. All processed documents not falling within an exemption were
released. The letter, in addition to the FBI's electronic records, show that all 450
processed documents were released together. Plaintiff's arguments, therefore, must fail.

relevance." *Johnson v. Exec. Office for U.S. Attys.*, 310 F.3d 771, 774 (D.C. Cir. 2002).

Here, the Hardy Declaration, together with coded references within the production, is legally sufficient to satisfy the government's burden. In particular, the Hardy Declaration explains that the FBI employs codes in order to reference its reasoning for why documents are redacted or withheld. Hardy Decl. ¶¶ 41-43. The codes appear in the production set of all responsive documents, which is appended to the Hardy Declaration and Bates-stamped HODGE 1-1761. Hardy Decl. ¶ 41. Thus each redaction or withheld page[2] is annotated with one or more codes, which refer back to detailed explanations laid out in the Hardy Declaration. Hardy Decl. ¶¶ 41-43; *see also* Def.'s Opp'n to Pl.'s Reply ("Def.'s Opp'n") at 13-14. The explanations in the Hardy Declaration contain the statutory provisions under which the information is withheld as well as the subcategories, which explain in more detail what the information is and why the information should be exempted under the applicable statutory provisions. *See* Hardy Decl. ¶ 43.[3] The Hardy Declaration also includes footnotes listing the Bates numbers that correspond with the subcategory of exempted information. *See, e.g.*, Hardy Decl. ¶¶ 51, 52, 55, 62.

---

[2] Withheld pages within the production set appear as blotted-out pages with appropriate Bates-stamps.

[3] For instance, the Hardy Declaration explains that three subcategories of information were withheld under FOIA Exception 7(D). Hardy Decl. ¶¶ 76-85. With respect to the third subcategory, coded "(b)(7)(D)-3," the Hardy Declaration explains that information withheld related to two third party witnesses who provided information to the FBI under the express assurance of confidentiality. Hardy Decl. ¶ 84. The Hardy Declaration goes on to explain the circumstances under which such assurance was given and how it was apparent from the documents that the parties were given such assurances. Hardy Decl. ¶¶ 84-85.

Thus, the FBI's Hardy Declaration is sufficiently specific, detailed, and separable to satisfy defendants' burden under *Vaughn* because the declaration provides "a reasonable basis to evaluate [each] claim of privilege." *See Judicial Watch*, 449 F.3d at 146; *see also Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 43-44 (D.D.C. 2009). Indeed, because the function, and not the form, of the index is dispositive, our Circuit has upheld similar agency declarations coupled with coded categories, in lieu of *Vaughn* indices. *See Judicial Watch*, 449 F.3d at 150; *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349-50 (D.C. Cir. 1987).[4]

### IV.    *The FBI's Search for Responsive Documents*

An agency's search is adequate if its methods are reasonably calculated to locate records responsive to a FOIA request. *See Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). As such, an agency need not search every records system as long as it conducts "a reasonable search tailored to the nature of a particular request." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). Indeed, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by

---

[4] The cases upon which plaintiff relies are inapposite. Unlike *King v. U.S. Dep't of Justice*, the Hardy declaration contains citations to the 1,761 page Bates-stamped production, making it easy for this Court and plaintiff to locate and match respective documents with the FBI's justifications for non-disclosure. *See* 830 F.2d 210, 220-21 (D.C. Cir. 1987) (holding that an index is insufficient where citations in an affidavit are absent and thus fail to direct the reader to the coded categories purported to justify the exemption). Further, unlike *Schoenman v. FBI*, the FBI's index here describes, in full, the nature of the documents withheld. *See* 604 F. Supp. 2d 174, 197-98 (D.D.C. 2009) (finding that disorganized affidavits that fail to provide any functional description of the withheld material will constitute an inadequate agency showing for *Vaughn* index purposes). Ultimately, so long as the agency's index provides "a reasonable basis to evaluate the claim of privilege," it is legally sufficient to satisfy the agency's burden. *Judicial Watch*, 449 F.3d at 146.

the appropriateness of the methods used to carry out the search." *Iturralde v.*

*Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *see also Weisberg v.*

*U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

Here, the Hardy Declaration sufficiently demonstrates the FBI's compliance with

FOIA's search requirements. *See Perry*, 684 F.2d at 127. As the Declaration explains,

the FBI maintains a Central Records System ("CRS"), which consists of "administrative,

applicant, criminal, personnel, and other files compiled for law enforcement purposes."

Hardy Decl. ¶ 27. While CRS serves as an investigative tool, it is also used in

responding to FOIA requests. Hardy Decl. ¶ 27. To seach CRS, the FBI uses a

mechanism called the Automated Case Support System ("ACS"). Hardy Decl. ¶ 27.

ACS, in turn, retrieves CRS records through the use of General Indices, which fall into

two categories, "main" entries, which "carr[y] the name corresponding with a subject of a

file contained in the CRS," and "reference" entries, which "are generally only a mere

mention or reference to an individual, organization or other subject matter, contained in a

document located in another 'main' file on a different subject matter." Hardy Decl. ¶ 29.

Generally, "ACS consists of three integrated, yet separately functional, automated

applications that support case management functions for all FBI investigative and

administrative cases." Hardy Decl. ¶ 31. These applications are Investigative Case

Management ("ICM"), which "provides the ability to open, assign and close investigative

and administrative cases as well as set, assign, and track leads," the Electronic Case File

("ECF"), which "serves as the central repository for the FBI's official text-based

documents," and the Universal Index ("UNI"), which provides "a complete subject/case

11

index to all investigative and administrative cases." Hardy Decl. ¶ 31.  The FBI Special

Agent assigned to the investigation and the Supervisory Special Agents in the field and at

headquarters decide whether to index names other than subjects, suspects and victims.

Thus, only "information considered to be pertinent, relevant, or essential for future

retrieval" is indexed.  Hardy Decl. ¶ 32.

   As the Hardy Declaration further explains, electronic surveillance records may be

searched through the FBI's ELSUR Indices.  "ELSUR Indices are used to maintain

information on subjects whose electronic and/or voice communications have been

intercepted as the result of a warrantless and/or consensual ELSUR or a court-ordered

(and/or sought from the Court) ELSUR conducted by the FBI."  Hardy Decl. ¶ 33.

   With respect to plaintiff's request, the FBI conducted searches of CRS, ELSUR

and its Laboratory Division in Quantico, Virginia.  Hardy Decl. ¶¶ 37-38.  The search of

CRS used variations of plaintiff's name, including the phonetic breakdown of his first,

middle and last names, as well as other means of identification, including date of birth,

place of birth, and Social Security Number.  Hardy Decl. ¶ 37.  This search returned 6000

pages of potentially responsive records.  Hardy Decl. ¶ 39.  The FBI then reviewed each

page to identify documents that were, in fact, responsive.  Hardy Decl. ¶ 39.  Neither the

search of ELSUR nor that of the Laboratory Division yielded any results.  Hardy Decl. ¶

38.

   Plaintiff raises various challenges to the adequacy of the FBI search.  First,

plaintiff notes that the Hardy Declaration does not provide a "detailed account of how the

responsive documents for Mr. Hodge's particular request were collected."  Pl. Opp'n at

19. This allegation, however, is contradicted by the Hardy Declaration itself, which explains the comprehensive nature of the databases searched, particularly the CRS, and explains the various identifying terms used in the actual search. Hardy Decl. ¶¶ 37-38.[5] Plaintiff further argues that documents contained in the 125 pages submitted in relation to the Epperson FOIA request prove that the search was inadequate. However, plaintiff can only identify one five-page report that was not released to plaintiff through plaintiff's own request. *See* Koyama Decl. ¶ 30; Ex. Q. The Hardy Declaration, on the other hand, notes that 6000 potentially responsive documents were identified as a result of its search. Five pages out of 6000 is hardly enough to create "substantial doubt" regarding the sufficiency of the search. *See Truitt*, 897 F.2d at 542. Ultimately, the results of a search do not determine whether the search is adequate. *See Hornbostel v. U.S. Dep't of the Interior*, 305 F. Supp. 2d 21, 28 (D.D.C. 2003).[6]

The procedures described in the Hardy Declaration explain in reasonable detail the

---

[5] Contrary to plaintiff's argument, FOIA does not require an agency to disclose who actually conducted the search. *See Perry*, 684 F.2d at 126. Indeed, the case cited by plaintiff merely lists the fact that the agency did disclose who conducted the search as support for a finding that the search was adequate. It does not require such detail. *See Consumer Fed'n of Am. v. U.S. Dep't of Agric.*, 539 F. Supp. 2d 225, 227 (D.D.C. 2008).
[6] Plaintiff's remaining arguments are equally unpersuasive. For instance, plaintiff alleges that defendants did not identify whether any aliases were used as search terms. However, as defendants point out, plaintiff did not identify any aliases (or even the fact of possible aliases) in his FOIA request. Thus, the FBI was under no obligation to search for those aliases. *See Kidder v. FBI*, 517 F. Supp. 2d 17, 23-24 (D.D.C. 2007). As noted above, the search conducted by the FBI was tailored to plaintiff's own request. Finally, the Hardy Declarations sufficiently explains why documents that were determined to be potentially responsive were ultimately found non-responsive and why certain documents were released with the filing of defendants' motion for summary judgment. Hardy Decl. ¶¶ 39-40. Neither of these circumstances indicates bad faith. *See Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986).

scope and method of the agency's search. *See Perry*, 684 F.2d at 126. It is further reasonable that documents pertaining to plaintiff – who was a suspect in an FBI investigation – would be found within CRS files and ELSUR Indices, precisely because these are central repositories of information relating to investigations. *See Campbell*, 164 F.3d at 28. That no documents were found to be responsive on the ELSUR Indices or at the Laboratory Division is not determinative of the sufficiency of the search. *See Iturralde*, 315 F.3d at 315; *see also SafeCard Servs.*, 926 F.2d at 1201. Further, it seems obvious that the databases searched allowed the FBI to conduct a search by using an individual's name or other identifiable information – which is, indeed, appropriate given plaintiff's request for all records "pertaining to Mr. Hodge." *See* Hardy Decl., Ex. A. Thus, the search was reasonably tailored to plaintiff's request. *See Campbell*, 164 F.3d at 28.

V.    *Segregability*

Plaintiff also claims that defendants have not shown that non-exempt information was segregated from exempt information and properly released as required by FOIA. Pl. Opp'n at 26-28. Indeed, if an agency claims that a document is exempt under FOIA, any reasonably segregable information must be released after excising the exempted information, unless the non-exempt information is inextricably intertwined with the exempt information. *Trans-Pac. Policing Agmt. v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999).

The Hardy Declaration adequately states that "the FBI carefully examined the 1,762 pages of responsive records" and released all reasonably segregable non-exempt

information. Hardy Decl. ¶ 89; *see also* Hardy Decl. ¶ 41 ("Every effort was made to provide plaintiff with all material in the public domain and with all reasonably segregable portions of released material."). In the absence of contrary declarations by plaintiff or specific cites to potentially unsegregated documents, the Hardy Declaration is afforded the presumption of good faith. *See SafeCard Servs.*, 926 F.2d at 1200.[7] Further, plaintiff's claim that large chunks of material are redacted with cites to various exemption and, therefore, evidences defendants' failure to segregate, is to no avail. *See* Pl. Opp'n at 28. Because the Hardy Declaration and annotations identify the exemptions claimed for each individual document and, indeed, for each redaction, defendants have met their burden under the law of our Circuit. *See Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007). Plaintiff's reliance on *Vaughn* to challenge these redactions is misplaced. As the *Vaughn* Court noted, the agency need only devise an indexing system that subdivides "large" documents into "manageable parts cross-referenced to the relevant portion of the Government's justification." *Vaughn*, 484 F.2d at 827. Here, annotations have been placed by each redaction within each page. *See* Koyama Decl., Ex. M. Further, given the nature of the material – investigative reports – it is not surprising that information would fall within multiple exemptions. *Cf. Vaughn*, 484 F.2d

---

[7] Plaintiff has submitted one exhibit as evidence that the FBI's redactions were excessive under the exemptions claimed. The exhibit is an FBI investigative report, FD-302, and as indicated by the non-redacted information on the page, documents an interview conducted during an investigation. Koyama Decl., Ex. M. The FBI's annotations, which indicate the exemptions claimed, together with the non-redacted information, are sufficient for this Court to assess whether defendants have properly invoked the exemptions. *See infra* Sec. VI. This Court finds, therefore, that nothing in the proffered exhibit controverts the Hardy Declaration's claims.

at 827-28. The Hardy Declaration is thus sufficient to satisfy this Court's finding that all reasonably segregable non-exempt material has been released.

### VI.   *FOIA Exemptions*

Under the law of our Circuit, "[i]f an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, . . . the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions." *Larson*, 565 F.3d at 865. Here plaintiff challenges defendants' invocation of FOIA Exemptions 3, 6, 7(C) and 7(D). Plaintiff fails, however, to put forth any evidence to counter the Hardy Declaration's detailed explanation regarding these claimed exemptions.[8] Therefore, based on the Hardy Declaration, this Court finds, for the following reasons, that defendants' justifications for invoking these FOIA exemptions are sufficient under the law of this Circuit. *See id.* at 862.

### A. *Exemption 3*

Exemption 3 allows an agency to withhold information otherwise exempted by statute. 5 U.S.C. § 552(b)(3). Here, the relevant statute is Federal Rule of Criminal Procedure 6(e), which relates to matters "occurring before the grand jury." Fed. R. Crim. P. 6(e). In withholding information under Rule 6(e), our Circuit has held that the "the touchstone is whether disclosure would tend to reveal some secret aspect of the grand

---

[8] Plaintiff does not challenge Exemptions 2, 7(E) and 7(D) as it relates to the FBI's use of Source Symbols Numbers and/or information provided by a Source Symbol Numbered informant. Pl. Opp'n at 8.

16

jury's investigation, such matters as the identities or addresses of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Stolt-Nielsen Transp. Grp. LTD. v. United States*, 534 F.3d 728, 732 (D.C. Cir. 2008) (citations omitted).

The Hardy Declaration clearly states that any information withheld under Exemption 3/Rule 6(e) "consists of names of third-party individuals who were either subpoenaed to provide information directly related to the criminal activity of Benny Lee Hodge or actually testified before a Federal Grand Jury." Hardy Decl. ¶ 55. Nonetheless, plaintiff claims that defendants' redactions under Exemption 3 are excessive. Pl. Opp'n at 29. Plaintiff points to one exhibit to illustrate this point. Pl. Opp'n at 29 (*citing* Koyama Decl., Ex. M, at 1). However, that exhibit cites not only Exemption 3/Rule 6(e), coded "(b)(3)-1," but also to Exemptions 6, 7(C), and often 7(D). As explained below, Exemptions 6, 7(C) and 7(D) are sufficiently broad to cover the withheld information. Further, that these names are contained in an FBI investigative report, FD-302, does not diminish the applicability of Exemption 3. FD-302s are the very forms on which information relating to Grand Jury witnesses, and others, would appear. *See United States v. Harrison*, 524 F.2d 421, 424-25 (D.C. Cir. 1975). The Court, therefore, concludes that defendants have properly withheld the names of individuals who were either subpoenaed or appeared as witnesses before the Grand Jury under Exemption 3.

B. *Exemption 7(C)*[9]

Exemption 7 generally applies to "records or information compiled for law enforcement purposes," if disclosure of such records would lead to one of various enumerated harms. 5 U.S.C. § 552(b)(7). Exemption 7(C), in particular, protects information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Thus, in determining the applicability of Exemption 7(C), the Court must balance the interests advanced by FOIA's disclosure requirements against the privacy interests of the individuals mentioned in the records. *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). "Because the FOIA is concerned with the right of the general public to know what their government is up to, the identity and interest of the party requesting the document are irrelevant to this balancing." *Mays v. DEA*, 234 F.3d, 1324, 1327 (D.C. Cir. 2000). This applies equally to individuals seeking information in order to challenge a criminal conviction. *See Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 76 (D.D.C. 2008).

Here, the information in question was clearly compiled for "law enforcement purposes." *See* 5 U.S.C. § 552(b)(7). The Hardy Declaration states that information withheld under Exemption 7(C) relates to the identity of agents, federal, state and local

---

[9] Both Exemption 7(C) and Exemption 6 protect individual's privacy interest, when balanced against the public interest in disclosure. Accordingly, the Hardy Declaration makes clear that all information withheld under Exemption 6 is also withheld under Exemption 7(C). *See* Hardy Decl. ¶ 58. Further, plaintiff's challenge to Exemption 6 falls with his challenge to Exemption 7(C). Pl. Opp'n at 31, n.8. Therefore, because the analysis under both is also the same, *see Durrani v. U.S. Dep't of Justice*, 607 F. Supp. 2d 77, 90, n.4 (D.D.C. 2009), this Court will only undertake an analysis under Exception 7(C).

government employees, victims, and third parties who provided information to the FBI, were merely mentioned, or were of investigative interest. Hardy Decl. ¶¶ 60-75. It is well settled that these individuals have a substantial interest in their anonymity. *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 893-96 (D.C. Cir. 1995); *Coleman v. FBI*, 13 F. Supp. 2d 75, 80 (D.D.C. 1998). As there is no public interest against which to balance such a substantial privacy interest, *see Mays*, 234 F.3d at 1327, defendants properly withheld the information under Exemption 7(C).

Plaintiff, however, challenges the application of the exemption, arguing that the redactions made were excessive. Pl. Opp'n at 31-32. This argument is to no avail. Exemption 7(C) is not limited to basic indentifying information such as names, addresses and phone numbers. Indeed, if any information "would reveal the identities of individuals who are subjects, witnesses, or informants in law enforcement investigations, those portions of responsive records are categorically exempt from disclosure." *Nation Magazine*, 71 F.3d at 896; *see also Coleman*, 13 F. Supp. 2d at 80. Thus, the length of the redaction does not run contrary to the exemption claimed.

Plaintiff's additional argument also must fail. While public disclosure of documents may lead to the waiver of the FOIA exemption, the plaintiff bears the initial burden of showing that the requested information:  (1) is as specific as the information previously disclosed; (2) matches the information previously disclosed; and (3) was made public through an official and documented disclosure. *See Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999); *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990). Apart from the 125 pages proffered in connection with the Epperson FOIA cover letter, which

19

do not affect this analysis, *see supra* Sec. II, plaintiff provided newspaper articles relating to the underlying crimes. Pl. Opp'n at 32 (*citing* Koyama Decl. ¶ 23, Ex. N). However, plaintiff fails to show how the information contained in the newspapers is as specific as or matches that contained in the responsive documents. Finally, plaintiff argues that defendants were required to determine the life status of any individual whose information was withheld. Pl. Opp'n at 33. However, "while death of an individual reduces the privacy interest, it does not eliminate it." *Blanton v. U.S. Dep't of Justice*, 64 Fed. App'x 787, 789 (D.C. Cir. 2003). Thus, even assuming all the individuals have died, because there is no identifiable public interest here, their interests, though diminished, would justify withholding information under Exemption 7(C). *See id.*

This Court, therefore, finds that defendants have properly withheld information under Exemption 7(C).

### C. Exemption 7(D)

Exemption 7(D) protects "the identity of a confidential source," if the information was furnished on a confidential basis, and "information furnished by a confidential source," if compiled by a law enforcement authority during the course of a criminal investigation. 5 U.S.C. § 552(b)(7)(D). As FOIA exemptions must be narrowly construed, an agency is not entitled to a presumption of confidentiality with respect to its sources. *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993). The exemption's applicability, therefore, "depends upon whether the particular source who furnished the information at issue was granted confidentiality, either expressly or by implication." *Mays v. DEA*, 234 F.3d 1324, 1328 (D.C. Cir. 2000).

There is no question here that the information provided by the FBI was compiled for law enforcement purposes, by a criminal law enforcement authority and during the course of a criminal investigation. Plaintiff, however, asserts that the Hardy Declaration is insufficiently detailed for plaintiff or this Court to determine whether the information was provided by a confidential source and on a confidential basis, either expressly or by implication. Pl. Opp'n at 34-38. I disagree.

With respect to information withheld based on an express grant of confidentiality, the Hardy Declaration explains that "two third-party individuals" were promised confidentiality after the individuals made a request based on their fears of reprisal. Hardy Decl. ¶ 84. The Hardy Declaration then details the circumstances of that promise, noting that "[prior] to conducting the interview, the FBI expressly promised" that neither their identities nor their proffered information would be disclosed. Hardy Decl. ¶ 84. Further, the Hardy Declaration states that the reports, themselves, were annotated with the "words 'protect' or 'protect identity' when the individuals' names are referenced in the file." Hardy Decl. ¶ 84. Such notations provide "probative evidence that the source did in fact receive an express grant of confidentiality." *See Campbell*, 164 F.3d at 34 (internal quotations omitted).

With respect to information withheld based on an implied grant of confidentiality, the Hardy Declaration again more than sufficiently provides a basis on which to determine that the information was properly withheld under the exemption. Having explained the brutality of the underlying crimes, the Hardy Declaration explains that the information provided by the third parties was "specific" and "singular in nature" and led

21

to plaintiff's arrest. Hardy Decl. ¶ 80. As this Court has noted, "[t]he nature of the crime investigated and informant's relation to it are the most important factors in determining whether implied confidentiality exists." *Amuso v. U.S. Dep't of Justice*, 600 F. Supp. 2d 78, 100 (D.D.C. 2009). Due to the violent nature of the crimes, it is reasonable to conclude that these sources disclosed information in confidence due to the fear of reprisal. *See Mays*, 234 F.3d at 1329.[10]

Thus, this Court finds that defendants have demonstrated that the information withheld pursuant to both an express and an implied grant of confidentiality logically falls within Exemption 7(D).

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendants' Motion for Summary Judgment [#15] and DENIES plaintiff's Cross-Motion for Partial Summary Judgment [#18]. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[10] Plaintiff argues that there is no evidence of any retaliation in the 25 years since these crimes occurred. This argument is, however, irrelevant to this analysis. What is dispositive is whether the source understood that the information provided would be kept confidential *at the time* the information was disclosed. *See Landano*, 508 U.S. at 172.